IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No.: 2:18-cr-416-TFM-SMD |
| | ) |
| KEMOND JAREUZ FORTSON | ) |

**SUPPLEMENTAL RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pending before the Court is Defendant Kemond Jareuz Fortson's Motion to Suppress (Doc. 21). Defendant's motion seeks to suppress drug and other evidence that he asserts was found during a warrantless search of his apartment performed subject to his arrest. *See generally* (Doc. 21). On July 31, 2019, the undersigned Magistrate Judge entered a recommendation that Defendant's motion to suppress be granted in part and denied in part. (Doc. 86). Specifically, the undersigned recommended that Defendant's motion to suppress the drug evidence be denied because the undersigned concluded that the drugs were found during a lawful *Buie I* protective sweep. *Id*. at 18-22. In reaching that conclusion, the undersigned determined that the location of the drugs—i.e., Defendant's master bedroom and master bathroom, *see id*. at 7-8—was immediately adjoining the place of Defendant's arrest—i.e., the mouth[1] of the hallway of the apartment, *see id*. at 8-13.

---

[1] In the undersigned's previous recommendation, the undersigned found as a matter of fact that Defendant was arrested in the rear of the apartment. (Doc. 86) at 8-13. In determining whether this area immediately adjoins the location of the drug evidence, the undersigned assigned Defendant's location of arrest to be the "mouth" of the apartment's hallway. *Id*. at 19-20. This assignment afforded Defendant the most leeway possible under the *Buie I* test because it is the farthest point from Defendant's master bedroom that remains within the rear of the apartment. (Doc. 86) at 19-20.

Therefore, the undersigned concluded that officers did not offend the Fourth Amendment when they seized the drugs pursuant to *Buie I*. *Id*. at 18-22.

After the undersigned entered the recommendation, the Government informed Defendant that it had spoken with an officer who was part of the team executing the arrest warrant for Defendant, and that the officer stated that he thought Defendant was arrested in the front of the residence. (Doc. 98-1) at 2. If true, this information would impact the undersigned's analysis regarding whether the protective sweep was permissible under *Buie I*. Therefore, the undersigned reopened the suppression hearing to hear Defendant's evidence. (Doc. 88).

I.   **FINDINGS OF FACT**

On August 6, 2019, AUSA Kevin Davidson sent an email to Defendant's counsel stating that he had spoken to Officer David Hill, who is a member of the United States Marshals Gulf Force Regional Fugitive Task Force, regarding the location of Defendant's arrest. (Doc. 98-1) at 2. In the email, AUSA Davidson stated the following:

> I spoke to a member of the USMS GCRTF, Dave Hill, today. The conversation was over the phone and very brief as he is out of state. He did not remember much off the top of his head but indicated that he thought Fortson was arrested in the front of the residence, although he could be mistaken.
>
> As that is arguably Brady material, I am passing it along. I will have multiple other persons testify that he was in the hallway outside the bedroom when arrested.

*Id*.

During the reopened suppression hearing, Officer Hill testified he served as the shield man for the team executing the arrest warrant for Defendant. Tr. 3[2] at 12. However, Officer Hill could not recall where the arrest team encountered Defendant or where he was taken into custody. Tr. 13, 16. When questioned regarding his statement to AUSA Davidson and how his testimony at the hearing potentially conflicted, Officer Hill clarified:

> Q. And during that conversation, you indicated to Prosecutor Davidson that it was your belief that Mr. Fortson was in the front of the residence, isn't that correct?
> A. Well, it wasn't just like that. He said: Could it have been in the front? And I said: It could have. I don't remember I don't recall exactly where we arrested him at.

Tr. 14; see also Tr. 23 ("I don't recall saying [Defendant] was in the front of the residence. I never said that."). Officer Hill suggested that, because he was on his way into court to testify in an unrelated matter, his communication with AUSA Davidson was simply misunderstood. Tr. 14, 15. Defendant had no other witnesses, and the Government did not place any additional officers on the stand to testify regarding the location of Defendant's arrest.

## II. DISCUSSION

The evidence received by the undersigned at the August 28th suppression hearing does not change the outcome of the undersigned's recommendation that Defendant's motion to suppress should be denied as to the seizure of the drug evidence. Officer Hill was unable to recall the location of Defendant's arrest, and there was no other evidence

---

[2] The undersigned refers to the testimony from the August 28, 2019, hearing as "Tr. 3," which is Document 99 on the court's docket.

presented that undermined the undersigned's conclusion that Defendant was arrested in the mouth of the hallway of the apartment. Therefore, because the undersigned is not persuaded from the evidence presented at the August 28th hearing that Defendant was arrested somewhere other than the mouth of the hallway of the apartment, the undersigned stands by his recommendation that the drug evidence in this case was legally seized as part of a *Buie I* protective sweep and should not be suppressed.

Done this 27th day of September, 2019.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE