IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-cr-416-WKW |
| | ) | [WO] |
| KEMOND JAREUZ FORTSON | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the parties' joint oral motion to continue trial. (Doc. # 130.) The motion was thoroughly argued in an on-the-record telephonic status conference on July 17, 2020. After serious consideration and for the reasons set forth below, the court will grant a continuance of the trial pursuant to 18 U.S.C. § 3161(h)(7).

**I.   BACKGROUND**

Defendant Kemond Jareuz Fortson has been charged with one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1), four counts of violating the Controlled Substances Act in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). (Doc. # 91.) After six continuances, the jury selection and trial in his case were set to begin on July 20, 2020. (Docs. # 15, 59, 90, 105, 111, 117.) During a telephonic status conference on July 17, 2020, the parties orally and jointly moved for a continuance due to their

concerns regarding the impact of the COVID-19 pandemic upon the structure of jury selection and trial. The motion was granted orally. (Doc. # 130.)

## II. STANDARD OF REVIEW

While the trial judge enjoys great discretion when determining whether to grant a continuance, the requirements of the Speedy Trial Act ("Act") limit that discretion. 18 U.S.C. § 3161; *United States v. Stitzer*, 785 F.2d 1506, 1516 (11th Cir. 1986). The Act provides in part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

§ 3161(c)(1). The Act excludes, however, certain delays from the seventy-day period, including delays based upon "findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h)(7)(A). In determining whether to grant an ends-of-justice continuance, the court "shall consider," among other things, whether denial likely would "result in a miscarriage of justice," *id.* at § 3161(h)(7)(B)(i), or "would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence," *id.* at § 3161(h)(7)(B)(iv).

## III.   DISCUSSION

The Sixth Amendment declares, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI.  These rights are so vital to the pursuit of justice that this courthouse displays them in its July Assembly Room—impressing upon all jurors in criminal trials the urgency of their task.  Mr. Fortson has waited patiently for his day in court, and unfortunately, that day must be delayed again.

### A. *The COVID-19 Pandemic*

The nation and this judicial district have been greatly impacted by the ongoing COVID-19 pandemic.  The health and safety of trial participants and the public are interests of the highest order for this court.  The President of the United States has declared a national emergency.  General Orders have been entered in response to the outbreak of Coronavirus Disease of 2019 (COVID-19) within the Middle District of Alabama, and to the rapidly evolving threat to health and safety posed by the outbreak.  *See, e.g.*, Order, *In re: Court Operations Under the Exigent Circumstances Created by COVID-19 and Related Coronavirus*, No. 2:20-mc-3910-ECM (M.D. Ala. March 17, 2020), ECF No. 2.  These General Orders have acknowledged the unprecedented nature of the public health emergency caused by COVID-19.

That emergency continues in Montgomery County, which the Alabama Department of Public Health currently classifies as a "high risk" county due to the extent of the county's COVID-19 problems. *See* Ala. Dep't of Pub. Health, *Alabama's Covid-19 Risk Indicator Dashboard*, https://alpublichealth.maps.arcgis.com/apps/opsdashboard/index.html#/b585b67ef4074bb2b4443975bf14f77d (last visited July 20, 2020). Those risks also exist in the twelve counties that make up the Northern Division of this District, from which this jury will be assembled. The Alabama Department of Public Health lists four of the counties of this Division in its very high risk category (Chilton, Covington, Bullock, and Barbour), five in its high risk category (Montgomery, Autauga, Butler, Coosa, and Pike), and three in its moderate risk category (Elmore, Crenshaw, and Lowndes). *Id.* COVID-19 can cause severe illness, and it poses particularly high risks for older adults and people of any age who have serious underlying medical conditions. Ctrs. for Disease Control & Prevention, *What You Should Know About COVID-19 To Protect Yourself and Others*, https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf (last visited July 20, 2020).

When the decision to continue the trial was made three days ago, over sixty thousand Alabamians had been confirmed positive with the virus, over seven thousand had been hospitalized, and twelve hundred had died. Ala. Dep't of Pub. Health, *Alabama's COVID-19 Data and Surveillance Dashboard*,

https://alpublichealth.maps.arcgis.com/apps/opsdashboard/index.html#/6d2771faa9da4a2786a509d82c8cf0f7 (as of July 17, 2020). Since then, roughly seven thousand new cases have been confirmed, contributing to the nearly twenty-three thousand new cases that have been confirmed statewide in the past fourteen days. *Id.* (last visited July 20, 2020). The court takes judicial notice of these facts that are both generally known within this court's territorial jurisdiction and that "can be accurately and readily determined from" public records "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Both the State of Alabama and the Centers for Disease Control and Prevention recommend that individuals stay at home as much as possible. *See* Ctrs. for Disease Control, *supra*; Office of Ala. Governor Kay Ivey, *Order of the State Health Officer Suspending Certain Public Gatherings Due to Risk of Infection by Covid-19*, at 2 (as amended July 15, 2020), https://governor.alabama.gov/assets/2020/07/Safer-at-Home-Order-Mask-Amendment-7.15.2020-FINAL.pdf. Both the State of Alabama and the Centers for Disease Control and Prevention recommend that when individuals do venture outside of the home, they maintain at least six feet of distance from individuals outside of their household. *See* Ctrs. for Disease Control, *supra*; Office of Ala. Governor Kay Ivey, *supra*, *passim*.

### B. *Safety Preparations for Jury Selection and Trial*

The court takes seriously its special responsibility to protect trial participants, members of the public, and, particularly, the members of the jury, who were to be called upon during a national crisis to carry on one of the nation's most sacred civic duties. Diligent efforts were undertaken to prepare the Montgomery court facilities for a July 20 trial. The court planned to mandate all trial participants, except for the testifying witness, to wear face masks. Prospective jurors were to be examined in groups so that they could be spaced at least six feet apart from each other. Plexiglass shielding has been erected in the courtroom to provide barriers in front of the judge, law clerk, witness stand, courtroom deputy, and jury box. All evidence was to be displayed electronically, rather than handed to jurors. Members of the petit jury were to be spread out across the jury box and the visitors' gallery. Defendant's family members were to be the only in-person public spectators. All other spectators were to view the trial via video broadcast displayed in another courtroom or on the court's website. Jurors were to be sequestered during each day's proceedings so that they could not disperse into the community and risk infection during daytime meals. Jurors would deliberate in a large courtroom, rather than in the smaller jury deliberation room.

### C. *Weighing the Interests*

Still, there are non-safety factors to consider when setting and structuring a criminal trial. In the telephonic status conference that took place on July 17, 2020, the parties raised a number of concerns, some of which suggest a continuance. Defense counsel argued that the pandemic called into question the likelihood that the jury venire would be drawn from a fair cross-section of the community, particularly regarding the age, race, and political affiliations of the venire. They argued that their ability to represent their client could be hindered by their inability to see and respond to jurors' facial expressions during jury selection and trial. They argued that their client might be prejudiced by the jury's inability to see his face due to masking. They opposed the court's plan to seat some jurors behind the Government's table and expressed concerns that jurors could be distracted by the unusual procedures and by their personal worries about infection. They were particularly worried that jurors might rush deliberations in a multi-count indictment in order to separate from each other as quickly as possible. Complicating matters further, the court also considered the fact that Mr. Fortson, who is currently detained in the Montgomery City Jail, personally desires for the trial to take place as soon as possible.

Our judicial system envisions not a perfect jury or even a community-balanced jury, only a fair and impartial jury. As was pointed out to the parties during

7

the conference, the traditional remedy for concerns related to potential social, political, cultural, and even religious preconceptions the jurors bring with their presence is thorough and searching voir dire with prospective jurors under oath. The undersigned's experience in over forty-four years of courtroom culture in the United States is that our jurors take very seriously their under-oath promises to be fair and impartial; they acknowledge the dichotomy of a system in which actors (including most especially judges) enforce law that they may not necessarily agree with, biases notwithstanding. While the system is neither perfect nor failsafe, no human institution is. But it is continuing concerns with a focus on jurors—and a joint motion to continue the trial over the objection of Mr. Fortson[1]—that convince the undersigned under a totality of circumstances that an ends-of-justice continuance is justified.

The parties have demonstrated that the ends of justice served by continuing the trial outweigh the best interest of the public and Defendant in a speedy trial. *See* § 3161(h)(7)(A). A continuance serves the interests of justice by permitting the

---

[1] An unopposed motion over the objection of a defendant is superficially non-sensical. An explanation is in order. Counsel for Mr. Fortson very ably presented the reasons he opposed a continuance, and they were substantial and seriously considered by the undersigned. Counterweighing his reasons were the totality of circumstances described above, and the assurance that this continuance would be as brief as humanly possible (approximately three weeks), that the court is hard at work in the interim to ensure the safety of body and mind of all trial participants, and that Mr. Fortson will be at the top of the next docket of cases of the undersigned. In ordinary times, a jury might have been struck on July 20 and instructed to return for trial on August 10, but these are not ordinary times. Finally, circumstances are such that a continuance was inevitable with or without a motion.

parties to effectively prepare to try this case under the modified procedures discussed during the status conference. The added time will permit the court to consider the safety of face shields or transparent face masks—which may ameliorate the parties' concerns regarding the inability to see the jurors' and Defendant's demeanors—and to procure face shields, transparent face masks, or additional plexiglass shielding. Ensuring that the prospective jurors and members of the petit jury can focus on the trial presentation with as few distractions as possible is necessary to prevent a miscarriage of justice.

Accordingly, it is ORDERED that the parties' joint motion to continue trial (Doc. # 130) is GRANTED and that the trial is CONTINUED from July 20, 2020, to the criminal term of court beginning **August 10, 2020**, in Montgomery, Alabama. Counsel should direct all further filings in the case to the undersigned presiding district judge.

DONE this 20th day of July, 2020.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE